ORIGINAL

Approved: _____
Courtney Heavey
Assistant United States Attorney

Before:  THE HONORABLE LISA MARGARET SMITH
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :   **SEALED COMPLAINT**  19mag
                                   :                          4421
         - v. -                    :   Violations of
                                   :   18 U.S.C.
                                   :   §§ 922(x)(1)(A) and
MAX NIEVES,                        :   924(a)(6)(B)(ii)
                                   :
              Defendant.           :   COUNTY OF OFFENSE:
                                   :   WESTCHESTER

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    Jeremy Dellapia, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation and charges as follows:

COUNT ONE
(Transferring a Handgun to a Juvenile)

    1.   On or about April 2, 2019, in the Southern District of New York, MAX NIEVES, the defendant, who is not a juvenile, knowingly delivered and otherwise transferred a handgun to another individual, a person who NIEVES knew and had reasonable cause to believe was a juvenile, and did so knowing and having reasonable cause to know that the juvenile intended to carry and otherwise possess and discharge and otherwise use the handgun and ammunition in the commission of a crime of violence, to wit, New York Penal Law Section 120.05, attempted assault in the second degree.

    (Title 18, United States Code, Sections 922(x)(1)(A) and
                    924(a)(6)(B)(ii).)

    The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.  I am a Special Agent with the Federal Bureau of Investigation.  I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, as well as my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part.

3.  On or about the morning of April 2, 2019, law enforcement officers from the Peekskill Police Department ("Peekskill P.D.") responded to 911 calls reporting that shots had been fired in the vicinity of the Crossroads Apartment Complex at Brown Street and South Broad Street in Peekskill, New York (the "Buildings").

4.  In connection with this investigation, on or about April 2, 2019, officers from the Peekskill P.D. interviewed a witness ("Witness 1"), who was present at the Buildings on the morning of April 2, 2019.  Witness 1 was also one of the people who called 911 on the morning of April 2, 2019, to report gunshots being fired in the vicinity of the Buildings.  I have reviewed a copy of the report of the interview of Witness 1 and listened to Witness 1's 911 call.  Based on this review, I have learned the following:

a.  At approximately 10:55 a.m. on April 2, 2019, outside one of the Buildings, Witness 1 observed a Hispanic male wearing a red jacket and green pants, ("Individual 1"), arguing in English and Spanish with two other individuals:  (1) a short, Hispanic male wearing a black hoodie with white X's on the sleeves and black pants, who Peekskill Police Officers later identified as MAX NIEVES, the defendant; and (2) a young, African American female with short hair, jeans, and black sneakers ("Female 1").

b.  Individual 1 took out a cellphone and appeared to be filming NIEVES and Female 1.

c.  Female 1 stated in substance and in part, "Oh you're going to film us?"

          d.    Individual 1 began backing away, continuing to film NIEVES and Female 1.

          e.    NIEVES then raised his right hand, holding a small dark gun, and fired at Individual 1.

          f.    Female 1 then stated in substance and in part, "Give it to me."

          g.    NIEVES then gave the gun to Female 1 and Female 1 fired the gun at Individual 1.

     5.    In connection with this investigation, on or about April 2, 2019, officers from the Peekskill P.D. interviewed another witness ("Witness 2"), who was present at the Buildings on the morning of April 2, 2019. Witness 2 was also one of the people who called 911 on the morning of April 2, 2019 to report gunshots being fired in the vicinity of the Buildings. I have reviewed a copy of the report of the interview of Witness 2 and listened to Witness 2's 911 call. Based on this review, I have learned the following:

          a.    On the morning of April 2, 2019, Witness 2 saw a short male, wearing a long-sleeved black sweatshirt, with a white design down the sleeves, black sweatpants, with a matching white design down the legs, and something green covering his head and eyebrows, and possibly other parts of his face. Witness 2's description of the man was consistent with the individual Peekskill Police Officers later identified as MAX NIEVES, the defendant.

          b.    Witness 2 saw NIEVES in the upper parking lot of 1103 Brown Street, one of the Buildings, and observed him walking back and forth from the entrance of the parking lot to the staircase between 1101 Brown Street and 1103 Brown Street.

          c.    Witness 2 then saw NIEVES pull what looked like a black handgun from his right front pants pocket. NIEVES held the gun in his right hand, down against his side for a few seconds and then put it back into his pocket.

          d.    Witness 2 turned to walk away and call 911 and then heard gunshots from the area where he had just seen NIEVES holding a gun.

          e.    Witness 2 later saw NIEVES run into 1101 Brown Street.

6. 1101 Brown Street is one of the buildings in the vicinity of the Crossroads Apartment Complex. Based on reviewing the lease for 1101 Brown Street, Apartment 5J, I know that NIEVES is listed as a tenant.

7. Based on my conversations with three Peekskill Police Officers 1, 2, and 3 ("the Three Peekskill Police Officers"), I have learned the following:

   a. On or about April 2, 2019, a Peekskill Police officer showed Witness 1 surveillance footage taken from 1101 Brown Street on the morning of April 2, 2019.

   b. Witness 1 identified a man in a black hoodie, with white on the sleeves, as the man Witness 1 had observed fire the gun and then hand it to Female 1.

   c. Based on prior interactions, the Three Peekskill Police Officers recognized the individual Witness 1 identified as the man who fired the gun and then gave the gun to Female 1 as MAX NIEVES, the defendant. The Three Peekskill Police Officers were able to make this identification because the surveillance footage showed MAX NIEVES's face and the individual in the video surveillance had similar features to MAX NIEVES – young, short, smaller build, light-skinned African American.[1]

   d. Witness 1 also identified the female who was with NIEVES in the video, as the female Witness 1 had observed receive the gun from NIEVES and fire it at Individual 1.

8. Based on my review of the surveillance footage taken from 1101 Brown Street on the morning of April 2, 2019, I observed the following:

   a. A short male wearing a black hoodie, pulled over his head, with white markings on the sleeves, walked outside the 1101 Brown Street building around 11:00 a.m.

   b. Around 11:10 a.m., the same man in the black sweatshirt and black pants, with a green camo cloth covering his head, and a black cloth cover his mouth and neck, ran into 1101 Brown Street with a female matching Witness 1's description of Female 1.

---

[1] Witness 1 identified NIEVES and Individual 1 as being Hispanic, but both are light-skinned African American.

    c. Around 11:18 a.m., the same two individuals got into the elevator of 1101 Brown Street. Based on my comparison of the markings on the wall where the two got into the elevator and the wall markings on the fifth floor, I believe the two individuals got into the elevator from the fifth floor.

    d. As the man in the black hoodie walked into the elevator, his face was no longer covered and the Three Peekskill Police Officers were able to identify him as NIEVES. As NIEVES walked into the elevator, something silver was sticking out the front pocket of his hoodie, which looked like it could be part of a gun.

    e. While in the elevator, NIEVES turned towards Female 1, with his back to the camera and appeared to pull an object from the front pocket of his sweatshirt, which Female 1 then put in the front of her pants and covered over with her sweatshirt. Both NIEVES and Female 1 moved quickly and appeared to be trying to hide the object that NIEVES had given Female 1.

    f. NIEVES and Female 1 got out of the elevator at the bottom floor and exited 1101 Brown Street.

    g. As NIEVES stood outside, his face was again visible and the Three Peekskill Police Officers who are familiar with NIEVES were able to once again identify him as NIEVES. Video surveillance then showed that NIEVES and Female 1 got into a taxi and left.

   9. On or about April 2, 2019, Peekskill Police Officers interviewed another individual who was in the vicinity of the Buildings on the morning of April 2, 2019 ("Witness 3"). I have reviewed a copy of the report of the interview of Witness 3. Based on my review of the report, I have learned the following:

    a. On or about April 2, 2019 at about 11:20 a.m., Witness 3 observed a young, African American male, wearing dark colored clothing in the vicinity of the Buildings.

    b. Witness 3 recognized the individual as someone Witness 3 had seen in Peekskill, New York on several other occasions.

   10. Based on my review of the Peekskill Police reports, I know that on or about April 2, 2019, a Peekskill Police Officer showed Witness 3 a six pack of photographs and

Witness 3 identified a photograph of MAX NIEVES, the defendant, as the individual Witness 3 had seen in the vicinity of the Buildings on the morning of April 2, 2019.

11. Based on my review of surveillance footage, I observed that the individual Witness 1 identified in the surveillance video as the man who she saw fire a gun and give the gun to Female 1, looks like photographs I reviewed of MAX NIEVES.

12. Based on my conversations with the Three Peekskill Police Officers, I know that on or about April 2, 2019 in the vicinity of the Buildings, the Peekskill P.D. arrested Individual 1, who matched Witness 1's description and had a gunshot wound to his leg.

13. Based on my conversations with the Three Peekskill Police Officers, I have learned that the Three Peekskill Police Officers reviewed video surveillance from the vicinity of the Buildings on April 2, 2019 at approximately 11:00 a.m. and, based on prior interactions, identified Female 1, whose face was fully visible, as the female who was with NIEVES.

14. Based on my conversations with the Three Peekskill Police Officers, I have learned that Peekskill Police Officers executed a search warrant at 1101 Brown Street, Apt. 5J, on or about April 4, 2019 and found a backpack with several rounds of ammunition. The Peekskill Police Officers executing the warrant also found prescription medication addressed to MAX NIEVES, the defendant, in the apartment.

15. According to the Peekskill P.D.'s Database, on or about April 2, 2019, Female 1 was fifteen years old.

16. I have reviewed criminal history records for MAX NIEVES, the defendant, which showed that on or about April 2, 2019, MAX NIEVES was twenty years old.

17. Based on my conversations with the Three Peekskill Police Officers, I have learned that the Three Peekskill Police Officers have seen Female 1 with MAX NIEVES, the defendant, on several occasions in the last six months and Female 1 and NIEVES are believed to be friends.

18. Under New York Penal Law Section 120.05, actual and attempted assault in the second degree are felonies that

have as an element, the use, attempted use, or threatened use of physical force against the person or property of another.

WHEREFORE, deponent respectfully requests that MAX NIEVES, the defendant, be arrested, and imprisoned or bailed, as the case may be.

_____
Jeremy Dellapia
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of May, 2019

_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK